UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

MICHAEL SHUB,

                Plaintiff,

-against-

JOSEPH N. HANKIN, individually,
WESTCHESTER COMMUNITY
COLLEGE, and the COUNTY OF
WESTCHESTER,

                Defendants.
----------------------------------------------------------x



ORIGINAL

06 CIV. 8324

BRIEANT

COMPLAINT

Jury Trial Demanded

FILED
OCT 12 2006
USDC WP SDNY

      Plaintiff MICHAEL SHUB, by his attorneys Lovett & Gould, LLP, for his complaint respectfully states:

## NATURE OF THE ACTION

      1. This is an action for compensatory, liquidated and punitive damages proximately resulting from Defendants' conduct that violated Plaintiff's rights as guaranteed by the Age Discrimination in Employment Act and the First Amendment to the United States Constitution.

## JURISDICTION

      2. The Court's jurisdiction is invoked pursuant to 42 U.S.C. §§1331, 1343. With regard to Plaintiff's ADEA claim on June 2, 2006, he filed a Charge of Discrimination with the United States Equal Opportunity Commission and within ninety days of the filing of this action he was duly issued a Notice of Right to Sue by the EEOC. Plaintiff's

1

state law claim is interposed in accordance with the Court's supplemental jurisdiction, 28 U.S.C. §1367.

**THE PARTIES**

3. Plaintiff MICHAEL SHUB is a sixty-two year old citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. In 1970 Plaintiff was hired as an Instructor by Westchester Community College. In 1972 he was promoted to the position of Assistant Professor. In 1976 he was promoted to the position of Associate Professor of Mathematics - - a title he held until his retirement as more particularly referenced *infra*.

4. Defendant JOSEPH N. HANKIN (hereinafter "Hankin"), who is sued in his individual and personal capacities, at all times relevant to this complaint was the duly appointed President of Westchester Community College. Hankin has held that position for in excess of three decades over which time he has assumed quasi-dictatorial powers at the College - - relentlessly punishing and retaliating against members of the faculty (both past and present) who have dared to challenge his authority.

5. Defendant WESTCHESTER COMMUNITY COLLEGE (hereinafter "WCC") is a public educational institution sponsored and supported financially by the County of Westchester, New York. In that connection and for that reason the County and WCC are both parties to the collective bargaining agreement referenced *infra*.

6. Defendant COUNTY OF WESTCHESTER (hereinafter "County") is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

2

## THE FACTS

7. Commencing in 1974 Plaintiff engaged in a series of on-campus activities that incurred Hankin's enduring wrath, including:

    a. Serving as an outspoken member of the Executive Board of the Westchester Community College Federation of Teachers, a collective bargaining unit that had an antagonistic relationship with Hankin and vigorously opposed his reappointment to a multi-year term as President of the College,

    b. Serving as the Chairperson of the Academic Standards Committee at the College in which capacity he opposed the provision of academic credit for remedial mathematics course work, in defiance of Hankin - - publicly speaking out against him and exposing as absurd Hankin's position on the matter at a meeting of the Board of Trustees of the College,

    c. Challenging Hankin and other members of the College's administration with respect to giving preferential treatment to the English Department faculty regarding their teaching schedule, and *inter alia*,

    d. Publicly expressing, as a member of a faculty committee investigating the Faculty Student Association, his opinion that Hankin had misappropriated public funds.

8. As a long-term causally related consequence of Plaintiff's adversarial relationship with Hankin and his expression of opinion as set forth in paragraph 7 (hereinafter referred to as "misappropriated funds") *supra*, in September of 1989 with the

retaliatory objective of terminating Plaintiff's employment, Hankin preferred against Shub disciplinary charges accusing him of sexually harassing female students. Plaintiff vigorously defended against the charges and as a result of the ensuing disciplinary arbitration he was suspended from teaching at WCC for but a single semester.

9. Hankin was, as a result, infuriated.

10. With a view towards terminating Plaintiff's employment, on July 1, 1994 (as Plaintiff was, to Hankin's then knowledge, literally leaving the country to travel to Greece for the summer), Hankin had him served with another set of retaliatory disciplinary charges once again accusing him of sexual harassment of female students.

11. By reason of the procedure used by Hankin in commencing that disciplinary action and concurrently suspending Plaintiff from his teaching responsibilities, on September 2, 1994, Shub commenced an ultimately unsuccessful federal civil rights action against Hankin, WCC and the County in this Court [Shub v. Hankin, 869 F.Supp. 213 (1994), *aff'd* 66 F.3d 308 (1995)].

12. With respect to the second retaliatory disciplinary proceeding, over the next approximately five years Plaintiff again vigorously defended against the charges, this time adducing overwhelming evidence that Hankin had personally and routinely engaged in gender discriminatory conduct at public gatherings on the WCC campus - - conduct premised in large part upon Hankin's public recital of sexist jokes from a collection of thousands of exemplars of Hankin "humor" as maintained by him on campus.

13. When Hankin was ordered by the arbitrator conducting the disciplinary proceeding to produce for inspection by Shub's counsel the jokes, Hankin instead

strategically retreated from his prosecution of Plaintiff and negotiated a supposedly "confidential" stipulation resolving the disciplinary on July 23, 1999, by reason of which:

    a. Hankin withdrew with prejudice the disciplinary charges,

    b. Shub retired in good standing from WCC in August of 1999, and *inter alia,*

    c. The County paid Plaintiff $75,000.

Hankin then retaliated again and leaked the substance of the confidential stipulation to the WCC student newspaper for publication.

14. By reason of Plaintiff's retirement in "good standing" he was entitled, pursuant to the collective bargaining agreement ("CBA") among WCC, the County, and the Westchester Community College Federation of Teachers, to apply for and on a priority basis to teach adjunct courses in mathematics for each semester.

15. As a result and on November 5, 1999, Plaintiff applied for an adjunct teaching position at WCC for the spring 2000 semester.

16. That application was denied by Hankin, notwithstanding Plaintiff's absolute contractual entitlement to teach as an adjunct, on the calculatedly false written premise that Plaintiff had been terminated from WCC's employ as a result of disciplinary action. In issuing that denial Hankin was motivated in whole or in substantial respect by an intent to punish Plaintiff's for his exposure of Hankin's gender discriminatory on-campus conduct, his expression of opinion that Hankin had misappropriated funds and/or because Plaintiff has filed and prosecuted the civil rights action referenced *supra*.

17. Shub immediately filed a grievance pursuant to the CBA challenging Hankin's refusal to permit him to teach as an adjunct as violative of the CBA.

18. While that grievance was pending, Shub sequentially applied pursuant to the CBA to teach as an adjunct at WCC for the summer of 2000, the fall of 2000, the spring of 2001, the summer of 2001, the fall of 2001, and the spring of 2002.

19. Each of those applications was summarily denied by Hankin who was substantially motivated by a desire to punish Plaintiff for his expression of opinion to the effect that Hankin misappropriated funds, for his exposure of Hankin as a sexist during the second retaliatory disciplinary arbitration, and for his filing and prosecution of the federal civil rights action referenced *supra*. Each of those denials was the subject of a grievance pursuant to the CBA.

20. Following Hankin's rejection of Plaintiff's application to teach in the spring of 2002, an arbitral award in Shub's favor was issued on the basis of the spring 2000 grievance. As a result a once again infuriated Hankin strategically retreated and, rather than litigating each grievance to an unsuccessful arbitral conclusion, paid Shub approximately $63,000 in damages for the semesters with respect to which he was improperly denied an adjunct teaching assignment.

21. Thereafter pursuant to the CBA Plaintiff applied for and was granted adjunct teaching assignments at WCC during the fall of 2002, the fall of 2003, the spring of 2004, and the fall of 2004.

22. On February 2, 2006, Plaintiff again applied for an adjunct teaching position at WCC to teach two Statistics courses, which application was denied by Hankin on the calculatedly false premise that somehow or other Plaintiff was no longer on the "priority list" for such teaching assignments. In rendering that denial Hankin was motivated in whole or substantial respect by an intent to punish Shub for his having filed/prosecuted

6

the civil rights action referenced *supra*, for having exposed Hankin's gender discriminatory conduct on campus, and for having expressed his opinion that Hankin misappropriated funds. The denial of the spring 2006 application is currently the subject of yet another grievance filed pursuant to the CBA.

23. After denying Plaintiff's 2006 application to serve as an adjunct, Hankin instead hired in a considerably younger adjunct instructor to teach the subject Statistics courses. That individual had substantially less experience than Plaintiff, was much less qualified than Plaintiff to teach Statistics, and in fact was not on the so-called priority list.

24. On June 2, 2006, Plaintiff again applied to teach as an adjunct during the fall 2006 semester. Hankin rejected that application in retaliation for Plaintiff's having filed the age-premised Charge of Discrimination with the EEOC, about which filing Hankin was immediately given notice by means of a June 2, 2006, letter from counsel. In pertinent respect that correspondence advised:

> "I represent Michael Shub on whose behalf we today filed with the United States EEOC a Charge of Discrimination premised upon age. Westchester Community College is the charged party.
>
> It is a violation of federal law to take retaliatory action against anyone who has filed such a Charge. Under the circumstances and given you established pattern of vindictiveness and personal animus with respect to my client, be advised that any retaliation by you will result in an immediate filing in the United States District Court."

25. As a proximate result of Defendants' conduct Plaintiff has been: punished repeatedly for exercising his free speech rights; caused to suffer discrimination by reason

7

of his age; punished for having filed a Charge of Discrimination with the EEOC; publicly humiliated; caused anxiety and emotional upset; caused to suffer pecuniary loss; suffered damage to his professional career; publicly embarrassed and shamed, and otherwise been rendered sick and sore.

### AS AND FOR A FIRST CLAIM
### AGAINST ALL DEFENDANTS

25. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "24", inclusive.

26. Under the premises Defendants' conduct violated Plaintiff's rights as guaranteed by reason of the First Amendment to the United States Constitution.

### AS AND FOR A SECOND CLAIM
### AGAINST WCC AND THE COUNTY

27. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "24", inclusive.

28. Under the premises Defendants' intentional conduct violated Plaintiff's rights as guaranteed by the Age Discrimination in Employment Act.

### AS AND FOR A THIRD CLAIM
### AGAINST DEFENDANT HANKIN

29. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "24", inclusive.

30. Under the premises Defendant's conduct as an aider and abettor with respect to age discrimination violated Plaintiff's rights as guaranteed by reason of Section 296 *et. seq* of the New York State Executive Law.

WHEREFORE judgment is respectfully demanded:

a. On the First Claim awarding against Hankin such punitive damages as the jury imposes,

b. On the First Claim awarding as against all Defendants such compensatory damages as the jury determines,

c. On the First Claim awarding costs and reasonable attorney's fees,

d. On the Second Claim awarding such compensatory damages as the jury may determine and such liquidated damages as to the Court may seem fair and reasonable,

e. On the Second Claim awarding costs and reasonable attorney's fees,

f. On the Third Claim awarding such compensatory damages as the jury may determine, along with costs, and,

g. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
       October 7, 2006

LOVETT & GOULD, LLP
By:_____
      Jonathan Lovett (4854)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401